No. 24-11371

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

DEVIN BROSNAN & GARRETT ROLFE,

*Plaintiff-Appellants*,

---v.---

KIESHA LANCE BOTTOMS, in her individual and official capacities, PAUL HOWARD, in his individual and official capacities, DONALD HANNAH, in his individual and official capacities, CLINT RUCKER, in his individual and official capacities, THE CITY OF ATLANTA, GEORGIA, FULTON COUNTY, GEORGIA, AND ERIKA SHIELDS in her individual and official capacities,

*Defendant-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA
CASE NO. 1:22-cv-02337-LMM

BRIEF FOR PLAINTIFF-APPELLANTS DEVIN BROSNAN & GARRETT ROLFE

LANCE J. LORUSSO, ESQ.
KEN DAVIS, ESQ.
LORUSSO LAW FIRM, P.C.
1827 POWERS FERRY ROAD SE
BUILDING 8
ATLANTA, GEORGIA 30339
(770) 644-2378

ADAM HAMES, ESQ.
THE HAMES LAW FIRM LLC
511 EAST PACES FERRY ROAD NE
ATLANTA, GA 30305
(404) 842-9577

*Counsel for Plaintiff-Appellants*

*Brosnan, et. al. v. Bottoms, et al.* (Case No.: 24-11371)

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule

26.1-1, Plaintiff-Appellants furnish the following Certificate of Interested Persons and

Corporate Disclosure Statement.

Baby, Sada J., *Attorney for Defendant Erika Shields*

Bottoms, Keisha L., *Defendant in her Individual Capacity*

Buckley, Timothy J., *Counsel for Clint Rucker*

City of Atlanta, *Defendant*

Cressler, Taylor A., *Counsel for Defendants City of Atlanta, Keisha L. Bottoms, and Erica Shields*

Davis, Ken, *Counsel for Plaintiffs*

Fulton County Government, *Defendant*

Green, Noah, *Counsel for Paul Howard*

Hannah, Donald, *Defendant in his Individual and Official Capacity*

Hill, Eva N., *Counsel for Clint Rucker*

Howard, Paul, *Defendant in his Individual and Official Capacity*

Lewis, Joyce Gist, *Counsel for Keisha L. Bottoms and Erika Sheilds*

LoRusso, Lance J., *Counsel for Plaintiffs*

May, Leigh Martin, *United States District Court Judge for the Northern District of Georgia*

McGovern, Annarita L*, Counsel for Donald Hannah*

Plott, Matthew E.*, Counsel for Fulton County*

Rucker, Clint, *Defendant in his Individual and Official Capacity*

Shields, Erika, *Defendant in her Individual and Official Capacity*

Yarbrough, Walter B., *Counsel for Donald Hannah*

/s/ *Lance J. LoRusso*
Lance J. LoRusso, Esq.

*/s/ Ken Davis*
Ken Davis, Esq.

*/s/ Adam Hames*
Adam Hames, Esq.

*Counsel for Plaintiff-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument as this case involves important constitutional questions that will have profound consequences for rank-and-file law enforcement officers.  This case arises from a high-profile police involved shooting that garnered nationwide attention. Officials from the City of Atlanta and Fulton County scapegoated the officers involved despite clear video evidence they had done nothing wrong in violation of their constitutional rights.  These were acts done for rank political purposes and do not deserve any level of immunity.

The district court in this matter improperly granted defendants Rule 12(b)(6) motion to dismiss for failing to state a claim.  The district court repeatedly failed to apply the correct legal standard to the motion.  This also appears to be a case of first impression on whether a government actor can cause or effectuate a Fourth Amendment seizure using a mob of citizens.

Additionally, the district court improperly granted the motion in part *sua sponte* on a basis not raised by any defendant in violation of basic fairness and due process.  Oral argument will assist this Court's understanding of the legal errors of the district court.

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES.............................................................1

INTRODUCTION ............................................................................2

STATEMENT OF THE CASE.................................................................3

    A. Statement of Facts....................................................................7

    B. Procedural Stance....................................................................12

    C. Standard of Review..................................................................12

SUMMARY OF ARGUMENT ...............................................................13

ARGUMENT ...............................................................................15

    I.   THE DISTRICT COURT ERRED BY FAILING TO CONSIDER THE
TOTALITY OF CIRCUMSTANCES IN ANALYZING APPELLANTS
UNREASONABLE SEIZURE CLAIM AND FURTHER ERRED IN FAILING
TO CREDIT ALLEGATIONS OF APPELLANTS. ...........................................15

        A.   A Totality of The Circumstances Demonstrates No Probable Cause
Arguably Existed To Support Appellants' Arrests. ..........................................18

        B.   In Any Event the Arrest Warrant Omitted that the Video Evidence
Reviewed Demonstrated Appellants' Innocence. .............................................21

        C.   The Acts Complained of Clearly Violated Established Law. ..................25

    II.   THE DISTRICT COURT ERRED IN FINDING THERE WAS NO
SEIZURE OF PROPERTY, AND IGNORED FACTS TO FIND THAT SUCH
WAS NOT CAUSED BY DEFENDANTS. .......................................................26

        A.   A Seizure Occurred Under *Soldal*............................................29

        B.   The Law Was Clearly Established that Warrantless Seizure's Are *Per Se*
Unreasonable Unless Exception Applies. .........................................................30

        C.   The District Court Ignored Well Pleaded Causation. .............................33

III.   THE DISTRICT COURT ERRED BY MISSAPPLYING CLEAR CASELAW RELATING TO STIGMA-PLUS CLAIMS....................................35

IV.   THE DISTRICT COURT ERRED IN *SUA SPONTE* DISMISSING ROLFE'S EQUAL PROTECTION CLAIM ON GROUNDS NEVER ARGUED.............................................................................................38

V.   THE DISTRICT COURT MISAPPLIED THE BURDEN-SHIFTING QUALIFIED IMMUNITY FRAMEWORK.......................................................43

VI.   THE COURT ERRED IN FAILING TO ANALYZE THE FUNCTION PLEADED IN ITS SOVEREIGN IMMMUNITY AND STATE-CAPACITY ANALYSIS. ....................................................................................48

VII.  THE DISTRICT COURT ERRED BY BASING ITS MONELL ANALYSIS ON LEGAL MISAPPREHENSIONS. ...........................................52

VIII.   THE COURT ERRED BY ASSUMING ROLFE FAILED TO PROVIDE AN *ANTE LITEM* NOTICE WHERE IT WAS ONLY ARGUED THAT BROSNAN FAILED TO PROVIDE THE SAME. .................................52

CONCLUSION...............................................................................................53

CERTIFICATE OF COMPLIANCE.......................................................................54

CERTIFICATE OF SERVICE ................................................................................55

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Adams ex rel. Kasper v. School Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022)..................................................................................................41

*Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 706 (11th Cir.1985)...........34

*Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011).........................................................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................13

*Bailey v. United States*, 568 U.S. 186, 192 ..................................................... 17, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).....................................................13

*Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995)...............................................41

*Buchanan v. Warley*, 245 U.S. 60, 74 (1917)...........................................................27

*Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993)..................................................43

*Caldarola v. Cnty. of Westchester*, 142 F.Supp. 2d 431, 443 (S.D.N.Y. 2001)......46

*Capt. Jack's Crab Shack, Inc. v. Cooke*, Case Nos. 21-11112, 21-11114, 21-11113, 2022 WL 4375364 (11th Cir. Sept. 22, 2022)............................................... 45, 46

*Carter v. Butts Cty., Ga*., 821 F. 3d 1310, 1320 (11th Cir. 2016)...........................18

*Chabad Chayil Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla*, 48 F.4th 1222 (11th Cir. 2022)..................................................................................................34

*Chmielewski v. City of Pete Beach*, 890 F.3d 942, 950-51 (11th Cir. 2018)...........29

*City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989)...............................................34

*Collidge v. New Hampshire*, 403 U.S. 443, 455 ........................................................32

*Collier v. Buckner*, 303 F.Supp.3d 1232, 1236 (N.D. Ala. 2018) ...........................37

*Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018) ... 18, 19, 20

*Crocker v. Beatty*, 886 F3d 1132, 1136 (11th Cir. 2018) ..................... 14, 31, 32, 33

*D.C. v. Websy*, 583 U.S. 48, 56-57 (2018)..................................................................18

*Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) .........................................13

*Daniels v. Bango*, 487 F. App'x 532, 538 (11th Cir. 2012)......................................20

*Danow v. Borack*, 197 Fed.Appx. 853, 856 (11th Cir. 2006)...................................39

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) ...............................13

*Engquest v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008) ................................38

*Franks v. Delaware*, 438 U.S. 154 (1978).................................................. 17, 21, 26

*Freeman v. City of Dallas*, 186 F.3d 601, 605 (5th Cir. 1999) ...............................31

*Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1321–22

   (11th Cir. 2021) ....................................................................................................41

*Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) ...........................17

*Habert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)............. 14, 46

*Haves v. City of Miami*, 52 F.3d 918, 921–22 (11th Cir.1995) ...............................40

*Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019) .........................................13

*Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)...............................................12

*Holmes v. Kucynda*, 321 F.3d 2069 (11th Cir. 2003)...............................................26

*Illinois v. McArthur*, 531 U.S. 326 (2001)................................................................30

*Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1581 (11th Cir 1986)

...............................................................................................................................38

*Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 525, 527

(11th Cir. 1983) ........................................................................ 38, 42, 52

*Jones* v. *Cannon*, 174 F.3d 1271 (11th Cir. 1999)............................................. 26, 32

*Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007)....................................................19

*Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004)..... 13, 19, 20, 23

*Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) .........30

*Luke v. Gulley*, 975 F.3d 1140, 1293, 1295 (11th Cir. 2020)..................................16

*Madiwale v. Savaiko*, 117 F.3d 1321 (11th Cir. 1997).............................................21

*Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)......................................... 17, 26, 30

*Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)......................................... 17, 26

*Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980).............................35

*Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)................................32

*Meyer v. Nebraska*, 262 U.S. 390, 399 ..................................................................37

*Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334

(1993)...................................................................................................................31

*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978) …………………… 2, 11,52

*Owens v. Fulton Cnty*, 877 F.2d 947, 952 (11th Cir. 1989) ....................... 14, 50, 51

*Paez v. Mulvey*, 915 F.3d at 1276 (11th Cir. 2019) .................................. 21, 23, 26

*Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)..................46

*PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021)

.................................................................................................24

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979)...............................................41

*Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir.1995) .....................................19

*Rehberg v. Paulk*, 611 F.3d 828, 853(11th Cir. 2010)...............................................35

*Russell v. Redstone Fed. Credit Union*, 610 F. Appx. 807, 809 (11th Cir. 2015)...39

*Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir.1988) .....................................20

*Skop v. City of Atlanta*, 485 F.3d 1130, 1143-44 (11th Cir. 2007)........................18

*Smile Direct Club, LLC v. Lacefield*, No. 1:18-cv-02328-SDG, 2023 WL 2763662

.................................................................................................... 41, 42

*Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) .......................................... passim

*Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990)................................21

*Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011)...............................39

*Thomas v. Bryant*, 614 F.3d 1288, 1317 n. 29 (11th Cir. 2010)............................34

*Tillman v. Coley*, 886 F. 2d 317, 321 (11th Cir. 1989)...........................................20

*U.S. v. Gen. Motors Corp.*, 323 U.S. 373, 377-78 (1945) .......................................27

*United States v. Jacobsen*, 466 U.S. 109 (1984)............................................... 14, 30

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85

   (1984)..............................................................................................................31

*United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986)..................................21

*United States v. Paige,* 136 F.3d 1012, 1021 (5th Cir.1998)..................................31

*United States v. Place*, 462 U.S. 696, 701 (1983) ..................................................31

*U.S. v. Virden*, 488 F.3d 1317................................................................................31

*Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009) .......................... 43, 50, 51

*Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020)............... 16, 17, 18, 23

*Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) ....................41

*Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)......................................34

## Statutes

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1367 ......................................................................................................1

28 U.S.C. § 1331 ......................................................................................................1

28 U.S.C. §1342(a) ...................................................................................................1

42 U.S.C. § 1983 ...................................................................................................1, 26

O.C.G.A. §16-11-106................................................................................................4

## Other Authorities

Joseph E. Kennedy, Monstrous Offenders and the Search for Solidarity through

   Modern Punishment, 51 Hastings L.J. 829, 833 (2000)......................................40

Katie Rose Guest Pryal, *Heller's  Scapegoats*, 93 N.C. L. Rev. 1439, 1447 (2015)

    ..................................................................................................................40

Paul Kahn, *Managing Violence: Acoustic Separation, Memorials, and Scapegoats*,

    77 RJUPR 317 (2008) .........................................................................41

## **Rules**

Fed. R. Civ. P. 12(b)(6)........................................................ i, 1, 12, 13, 41

Fed.R.Civ.P. 15(a)................................................................................38

## **Constitutional Provisions**

Ga. Const. Art VI. ...............................................................................51

U.S. Const. Amend. IV .........................................................................37

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1342(a) because the underlying matter was a civil rights action brought pursuant to 42 U.S.C. § 1983, and the district court could exercise supplemental jurisdiction over related state law claims arising from the same transactions and occurrences pursuant to 28 U.S.C. § 1367.

The district court entered the challenged order on March 25, 2024, and the clerk entered judgment dismissing the case on the same date, March 25, 2024. Appellants timely filed a Notice of Appeal with the clerk of the district court on April 22, 2024.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment.

## STATEMENT OF THE ISSUES

I. Whether the district court erred in granting the defendants Rule 12(b)(6) motion by failing to consider the totality of circumstances of Appellant's unreasonable seizure claim and by failing to credit allegations of Appellants.

II. Whether the district court erred in finding there was no seizure of property and ignored facts pleaded to find that such was not caused by Appellees.

1

III. Whether the district court erred by misapplying clear law relating to stigma-plus claims.

IV. Whether the district court erred in *sua sponte* dismissing Officer Rolfe's equal protection claim on grounds never argued.

V. Whether the district court misapplied the burden-shifting qualified immunity framework.

VI. Whether the district court erred in failing to analyze the function pleaded in its sovereign immunity and state-capacity analyses.

VII. Whether the district court erred by basing its *Monell* analysis on erroneous legal conclusions.

VIII. Whether the district court erred by assuming Officer Rolfe failed to provide an *ante litem* notice where it was only argued that Brosnan failed to provide the same and where Officer Rolfe did in fact so provide and properly pled the same.

## **INTRODUCTION**

Much of this appeal boils down to a single question: would a reasonable person swear out an arrest warrant having relied only upon video recordings that clearly show that no crime was committed and only legal and justified force was used?

Beyond this, Appellants argue that in training county employees, subject to county policies and training regimes, on non-prosecutorial tasks, a district attorney acts in a county rather than state capacity. Further, Appellants contend that inciting violence, directed at identified individuals, forcing those individuals to flee for their lives and lose use of their homes, meaningfully interferes with those individuals' interests in their homes and property.

The facts pleaded in this matter, when distilled to their essence, present a picture of two craven officials, who abused their positions for political gain, knowingly condemning and castigating two peace officers who did no wrong. Despite knowing the fact that no crimes had been committed and Plaintiffs' actions were justified under Georgia law, appellees chose to endanger the lives of appellants for their own benefit, and to that end ran roughshod over constitutional rights to further their own political standing and curry favor with an agitated public.

## STATEMENT OF THE CASE

Plaintiff-Appellants Devin Brosnan ("Officer Brosnan") and Garrett Rolfe ("Officer Rolfe," together with Officer Brosnan "Appellants") brought suit against Keisha Lance Bottoms ("Bottoms"), Paul Howard ("Howard"), the City of Atlanta (on occasion the "City"), Fulton County (on occasion the "County"), Donald Hannah ("Hannah"), and Clint Rucker ("Rucker) for various constitutional and

state law torts; Rolfe, additionally, sued Erika Shields ("Shields").[1] *See generally* – Doc. 101, Doc. 103.

Appellants' complaints focused on the actions of Individual Defendants in the days following Appellants attempted apprehension of an intoxicated man Rayshard Brooks, who had violently resisted arrest, viciously assaulted Appellants, stole a conducted energy weapon[2] (CEW) from Officer Brosnan by force constituting a forcible felony under Georgia law, and was ultimately shot by Officer Rolfe after Brooks turned and extended his arm towards Officer Rolfe with the CEW in his hand when Officer Rolfe, fearing for his safety and the safety of those around him, had no choice but to utilize deadly force. Doc. 101, ¶¶ 30-40; Doc. 103, ¶¶ 27-40.

In the immediate aftermath of this clearly justified incident and after only watching videos *clearly demonstrating* that Appellants did nothing whatsoever unreasonable or illegal, Howard and Bottoms sought to turn tragedy into their personal and political advantage. Doc. 101, ¶¶ 60-63, 66; Doc. 103, ¶¶ 48-50, 56-57. To do this, Howard and Bottoms, members of the Georgia bar and the latter a former judge, ignored what they knew, namely that neither Appellant had done

---

[1] Plaintiff refers to Shields, Bottoms, Hannah, Rucker, and Howard collectively as "Individual Defendants" and refers to Hannah, Rucker, and Howard collectively as "Individual County Defendants."

[2] Georgia law classifies a CEW as a "firearm" per O.C.G.A. §16-11-106.

anything wrong and that all of Appellants' actions were proper and legal – facts later confirmed by a special prosecutor. Doc. 101, ¶¶ 63, 66, 113-114, pp. 33-34. Doc. 103, ¶¶ 56, 57, 93-94; pp. 30-31.

Howard immediately, through Rucker and Hannah, began a constitutionally inadequate investigation aimed at establishing sham probable cause to effect the arrest of Appellants, Doc. 101, ¶¶ 63, 66, 157; Doc. 103, ¶¶ 51, 56, 57, 145; this was done, with knowledge that there was no probable cause, Appellants' actions were lawful, and that no crimes had been committed, in order to allow Howard to publicize the arrests in campaign appearances. Doc. 101, ¶¶ 66-67, 68-70, 72-73, 77; Doc. 103, ¶¶ 55-57, 62, 66.

Ultimately, despite only viewing videos, which clearly demonstrated that no crime had been committed by either Appellant as evidence by the unequivocal dismissal by a special prosecutor, and knowing there was no probable cause, Doc. 101, ¶¶ 66, 157; Doc. 103, ¶¶ 56, 57, 145, Howard directed Hannah to secure an arrest warrant and Hannah swore out an affidavit in support of the arrest affidavit which contained both material misrepresentations,[3] Doc. 101, ¶¶ 66-67; Doc. 103,

---

[3] Along with the omitting the fact that the only evidence relied on clearly was exculpatory, Appellants set forth additional facts in their Complaints which were misrepresented and omitted in narrative form. *See generally* Doc. 101, pp. 32-34; Doc. 103, pp. 30-32.

¶¶ 56, 57, and omissions, which if contained would have vitiated probable cause. *Ibid.*

The most obvious and material omission being, the *only* evidence which existed, various video recordings, clearly demonstrated that Appellants committed no crime. Doc. 101, ¶ 66; Doc. 103, ¶ 56.

While Hannah and Rucker were securing the arrest warrant, *literally* concurrent with the same, Howard was preparing to announce the arrest of Appellants and the results of his probable cause investigation. Doc. 101, ¶¶ 68-72; Doc. 103, ¶¶ 58-61. This was done not to report on a trial, prosecution, or indictment, but rather to publicize Howard in his work as supervisor of a quasi-police force to further his chances at re-election. Doc. 101, ¶¶ 68, 72, 77, 120; Doc. 103, ¶¶ 58, 61, 66, 109. During this press conference, Howard knowingly lied on multiple occasions, stating that Appellants had committed crimes which he knew they had not committed. Doc. 101, ¶¶ 66, 118-119, pp. 33-34; Doc. 103, ¶¶ 56, 105-107; pp. 30-32.

As all of this was ongoing, Howard was in communication with Bottoms, coordinating their appearances to maximize their perceived political and reputational benefit in defaming Appellants. Doc. 101, ¶¶ 60-61, 116, 220-221; Doc. 103, ¶¶ 48, 49, 104, 210-211.

Howard and Bottoms encouraged and incited a violent mob, and focused that mob's anger on Appellants specifically, by both publicly identifying Appellants and accusing them falsely of legal and moral wrongdoing—again, it was known by both Howard and Bottoms that nothing that Appellants did was either improper or illegal. Doc. 101, ¶¶ 61, 62, 91, 100, 113-114; Doc. 103, ¶¶ 48, 49, 75, 84.

Appellants were forced to flee their homes to protect their lives, they were arrested without probable cause, their reputations were done irreparable harm, and ultimately all of this was done despite the fact that *all* Individual Defendants knew that Appellants were innocent of any wrongdoing. Doc. 101, ¶¶ 66, 113, 156-157; Doc. 103, ¶¶ 56, 93, 144, 145.

**A. Statement of Facts**

Appellants pleaded that Individual County Defendants secured an arrest warrant under process of law acting in concert. Doc. 101, ¶¶ 145-146; Doc. 103, ¶¶ 132, 133. In doing this, Individual County Defendants caused that arrest warrant to issue based on an affidavit which omitted exculpatory material facts that would have vitiated probable cause. Doc. 101, ¶¶ 66, 146; Doc. 103, ¶¶ 57, 133. Additionally, that affidavit contained false, material, inculpatory statements the exclusion of which would have vitiated probable cause. Doc. 101, ¶ 147-154; Doc. 103, ¶ 134-142.

7

Individual County Defendants conducted an inadequate investigation and knew they lacked probable cause. Doc. 101, ¶¶ 63, 66, 149, 156-157; Doc. 103, ¶¶ 51, 56, 136, 144-145. Indeed, they secured the warrant after solely viewing video recordings of the incident even though such recordings clearly demonstrated that no crime was committed. Doc. 101, ¶¶ 63, 66; Doc. 103, ¶¶ 51, 56. This was all done for the direct political benefit of Howard, so that Howard could publicize the arrest in furtherance of his campaign. Doc. 101, ¶¶ 68, 72; Doc. 103, ¶ 55, 61.

Appellants listed various specific statements and falsehoods, Doc. 101, ¶ 147-154; Doc. 103, ¶ 134-142, with the most significant *omission* being that the only investigation which had occurred was the review of videos which clearly demonstrated that no crime was committed. Doc. 101, ¶¶ 63, 66; Doc. 103, ¶¶ 51, 56. It was obvious that the force utilized by Appellants was authorized and legal. Doc. 103, ¶¶ 25-27, 45, 66, 154; Doc. 103, ¶¶ 22-24, 46, 56, 142.[4] As a result of this, Appellants were arrested and jailed absent probable cause, Doc. 101 ¶ 155; Doc. 103, ¶ 143. When the Individual County Defendants caused this seizure, they knew that no crime had been committed and knew they lacked probable cause to arrest Appellants. Doc. 101, ¶¶ 155-157; Doc. 103, ¶¶143-145.

---

[4] Additionally, it was clear to objective observers, including a special prosecutor, that no criminal conduct occurred, but rather that the motivations for the arrests were political and to facilitate multiple political appearances on media outlets. Doc. 101, ¶¶ 77-83; Doc. 103, ¶¶ 66-67.

8

Ultimately no prosecution occurred, and the matters were dismissed by a special prosecutor without indictment or presentment to grand jury. Doc. 101, ¶ 78, 160; Doc. 103, ¶ 148, 67. Appellants pleaded that all of the above would not have occurred had an actor been reasonable or rational and that the aforementioned acts were plainly unconstitutional. Doc. 101, ¶¶ 161-62; Doc. 103, ¶¶ 149-150.

Appellants pleaded that the actions of Howard and Bottoms, incited and encouraged a violent mob who ultimately forced Appellants out of their homes. Doc. 101, ¶ 93; Doc. 103, ¶ 77. Appellants pleaded that this was done absent notice and without meaningful chance to respond, Doc. 101, ¶ 98; Doc. 103, ¶ 82, and that no reasonable or rational actor would have behaved in such manner or believed that their actions served a legitimate government purpose. Doc. 101, ¶ 99; Doc. 103, ¶ 83. These actions meaningfully interfered with the use and possession of both Appellants' homes and their personal property. Doc. 101, ¶¶ 86-87; Doc. 103, ¶¶ 72-73.

Appellants pleaded that Bottoms and Howard caused the loss of their homes, that the loss of their homes was foreseeable, and that there was a clear, causal connection between the actions of and the loss of Appellants' homes. Doc. 101, ¶¶ 93-96, 103; Doc. 103, ¶¶ 77-80, 87.

In addition to Appellants' unreasonable seizures caused by Howard and the warrantless seizure of Appellants' homes caused by both Howard and Bottoms,

Howard and Bottoms embarked on a media blitz defaming Appellants, Doc. 101, ¶ 105; Doc. 103, ¶ 89, this was intimately related to the false arrest of Appellants and seizure of their property and homes. Doc. 101, ¶¶ 105, 128-131; Doc. 103, ¶¶ 89, 115-118. The public statements made by both Bottoms and Howard were knowingly false and imputed criminal conduct to Appellants which Bottoms and Howard knew had not occurred. Doc. 101, Pp. 22-28; Doc. 103, Pp. 19-27. Neither Bottoms nor Howard in making these press appearances, to further their political careers—and in Howard's case to further his campaign for re-election—were acting within the scopes of their respective offices. Doc. 101, ¶¶ 125-126; Doc. 103, ¶¶ 113-114.

The statements made by Howard and Bottoms were both knowingly false and imputed criminal conduct to Appellants . Doc. 101, ¶¶ 132-33; Doc. 103, ¶¶116-117. Additionally, the statements proximately caused the meaningful interference with Appellants' possessory interests in their homes and personal property. Doc. 101, ¶ 134; Doc. 103, ¶ 118.

Beyond all of the above, Rolfe specifically pleaded that he was a member of a non-suspect class, Doc. 101, ¶ 209, and that he had been treated differently to similarly situated individuals. *Id.* at ¶ 210. The difference in treatment had no rational basis. *Id.* at ¶ 21. To the extent Bottoms played a role in that disparate

treatment, namely Officer Rolfe's termination, such was outside of the scope of her duties and violative of clearly established law. *Id.* at ¶ 213.

Additionally, Appellants pleaded *Monell* liability, and sought to hold the City and County liable, *see generally*, Doc. 101 pp. 37-42; Doc. 103 pp. 35-40. Most relevant to this appeal, Appellants pleaded that Howard could be provided County employees, subject to County policies, hired by the County, subject to County termination and grievance procedures, who ultimately were under control of the County, Doc. 101, ¶ 16; Doc. 103, ¶ 13; that Hannah and Rucker were such County-provided employees who had non-prosecutorial duties, Doc. 101, ¶ 17; Doc. 103, ¶ 14; that in conducting quasi-police activities Howard, and others, were not fulfilling state prosecutorial duties, Doc. 101, ¶¶ 18, 19; Doc. 103, ¶¶ 15, 16; and that in running this quasi-police force Howard was working for his political benefit. Doc. 101, ¶ 63; Doc. 103, ¶ 51. Fulton County created a quasi-police force and delegated supervisory and training duties to Howard—and these duties were disconnected from state prosecutorial duties both in organization and in practice in the instant case. Doc. 101, ¶¶ 177-181; Doc. 103, ¶¶ 163-167.

Finally, the District court's holding failed to address various properly pled state law claims determining instead, *see generally* Doc. 164, pp. 40-41, that the state claims *in toto* were barred. *Id.*

### B. Procedural Stance

All appellees moved to dismiss the amended complaints. *See generally* Doc. 106, 106-1, 108, 108-1, 109, 110, 113, 113-1, 115, 115-1, 116, 116-1, 125, 126. Of particular relevance on appeal, Howard argued he was entitled to qualified immunity because he was acting as a prosecutor "initiating prosecutions," making public statements "concerning the prosecutions of [Appellants,]" and that the acts complained of represented prosecutorial decisions. *See* Doc. 125, pp. 14, 17; Doc. 126, pp. 14, 17. Additionally of particular note, the City only argued that Officer Brosnan failed to provide an *ante litem* notice, *see* Doc. 115-1, pp. 22-23; Doc. 116-1, pp. 1-25, and Bottoms supported her qualified immunity by citing various statutes without substantive argument. *See Id.* at p. 4; Doc. 116-1, p. 5.

The district Court ultimately dismissed the case, finding *inter alia*, that no constitutional tort was stated, that *all* Individual Defendants were entitled to qualified immunity, and that *all* state claims, even those brought by Rolfe, were barred due to a failure to provide an *ante litem* notice. Doc. 164, pp. 8-48.

### C. Standard of Review

District court rulings on Rule 12(b)(6) motions to dismiss are reviewed *de novo* by this Court. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) ("[This Court] review[s] *de novo* the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as

12

true and construing them in the light most favorable to the plaintiff.") (citation omitted). Also, this Court reviews "*de novo* a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss . . . ." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003).

Moreover, each and every one these facts, recited above, was to be accepted as true for purposes of the motion to dismiss and all favorable inferences therefrom in Appellants' favor. *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019); *Edwards v. Prime, Inc*., 602 F.3d 1276, 1291 (11th Cir. 2010).

Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint is sufficient when the plaintiff alleges enough facts to state a claim for relief that is facially plausible, *i.e*., has enough factual content that allows a court to draw a reasonable inference that the defendant is liable for the alleged misconduct.

## SUMMARY OF ARGUMENT

The district court erred in granting the defendants Rule 12(b)(6) motion in multiple ways. Specifically, it failed to correctly analyze a totality of circumstances under *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) and in any event failed to properly consider the facts pleaded in that analysis when addressing qualified immunity relating to a warrant affidavit containing deliberate omissions

13

Appellants contended abrogated probable cause; namely the examination of video recordings which clearly demonstrated that no crimes occurred.

The district court misapplied well established law, when analyzing property seizures, namely that warrantless seizures constitute *per se* violations of the Fourth Amendment unless a recognized exception applies, *Crocker v. Beatty*, 886 F3d 1132, 1136 (11th Cir. 2018), and the meaningful interference standard set forth in *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) and *United States v. Jacobsen*, 466 U.S. 109 (1984).

The district court failed to properly apply the burden-shifting framework as required by *Habert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998), and improperly shifted the analysis to Appellants where the Appellees failed to demonstrate as a matter of law that they were acting within the scope of their duties in their motions to dismiss.

Additionally, the district court misapplied *Owens v. Fulton Cnty*, 877 F.2d 947, 952 (11th Cir. 1989), namely by failing to utilize the mandatory functional analysis; the district court analyzed prosecutors acting in prosecutorial functions after specifically finding that Howard *was not* acting in a prosecutorial capacity.

Appellants additional arguments largely act as secondary arguments that are bound to succeed or fail as a matter of law based on the outcome of the above.

14

## ARGUMENT

I. **THE DISTRICT COURT ERRED BY FAILING TO CONSIDER THE TOTALITY OF CIRCUMSTANCES IN ANALYZING APPELLANTS UNREASONABLE SEIZURE CLAIM AND FURTHER ERRED IN FAILING TO CREDIT ALLEGATIONS OF APPELLANTS.**

Appellants pleaded that Defendant Howard instructed Defendant Hannah to secure an arrest warrant, after only watching video recordings which *clearly demonstrate* that no crimes were committed. Doc. 101, ¶ 63; Doc. 103, ¶ 56. Defendant Hannah, in swearing to the arrest warrant included both false inculpatory statements, and readily available exculpatory evidence—namely that the videos demonstrated no crime was committed—which vitiated probable cause. Doc. 101, ¶¶ 66, 67; Doc. 103, ¶¶ 56, 57. At the time the arrest warrant was secured, Defendants Hannah, Rucker, and Howard lacked a good faith basis for probable cause to support the criminal charges sworn to. Doc. 101, ¶¶ 156-157; Doc. 103, ¶¶ 144-145. Indeed, no reasonable actor in their position would have believed that their conduct was either reasonable, constitutional, or lawful. Doc. 101, ¶ 161; Doc. 103, ¶ 149. Ultimately, the charges were dismissed by a special prosecutor without presentment to a grand jury. Doc. 101, ¶ 160; Doc. 103, ¶ 148. The actions of Appellants were not only lawful but specifically noted as being "objectively reasonable." Doc. 101, ¶ 78; Doc. 103, ¶ 67.

Additionally, Appellants pleaded that any reasonable person viewing their actions would have believed their actions justified and legal; to be in accordance with APD policies, and would not have been viewed by a reasonable person as having been excessive or illegal. Doc. 101, ¶¶ 25-26; Doc. 103, ¶¶ 22-24. In other words, given the information known to Individual County Defendants, they knew they had no probable cause to have Appellants arrested, but caused the arrest in spite of this, and did so by omitting material exculpatory facts and including false inculpatory ones. Doc. 101, ¶¶ 66; 67; Doc. 103, ¶¶ 56, 57.

To succeed on this Fourth Amendment claim, a seizure pursuant to a constitutionally infirm process, a plaintiff must demonstrate that the process itself ultimately terminated in a manner not inconsistent with innocence and that the process itself was in some manner constitutionally infirm. *See Luke v. Gulley*, 975 F.3d 1140, 1293, 1295 (11th Cir. 2020). There was no question that a special prosecutor found that neither Appellant "committed a criminal offense" and their actions were "objectively reasonable." There was never a question of whether Appellants were ultimately found guilty, or that they did not ultimately prevail in a manner consistent with their innocence.Doc. 101, ¶ 78; Doc. 103, ¶ 67.

Thus, the question for the district court was limited to whether the process itself was "invalid" or "constitutionally infirm[.]" *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). Such process occurs when "[l]egal process has gone

forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement[,]" *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017), as well as when a state actor causes an arrest when they know they lacks probable cause. *id.* at 364 (citing *Bailey v. United States*, 568 U.S. 186, 192) (holding arrest *only* reasonable when "based on probable cause to believe that the individual has committed a crime").

This Court, and the United States Supreme Court, recognizes two independently sufficient ways to show invalid legal process. First, the process is constitutionally infirm where the officer who applied for the warrant should have known that her application failed to establish probable cause. *See Williams*, 965 F.3d at 1165. This route is based on *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) and its progeny, and reflects the well-known arguable probable cause standard. The arguable probable cause standard is also the measure of whether an officer is entitled to qualified immunity. *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

Second, the process is constitutionally infirm where the defendant, "including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant[.] *Id.* This "route" to constitutional infirmity is based on *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny. Under *Franks*, the qualified immunity question is

17

whether there was *actual* probable cause—*not arguable probable cause*—because it has long been established that an officer cannot intentionally or recklessly lie to arrest someone without probable cause. *Williams*, 965 F.3d at 1169.

## A. A Totality of The Circumstances Demonstrates No Probable Cause Arguably Existed To Support Appellants' Arrests.

Here, objectively Individual County Defendants lacked probable cause to believe they could have appellants arrested. This analysis "depends on a totality of the circumstances." *D.C. v. Websy*, 583 U.S. 48, 56-57 (2018) (holding arguable probable cause to be judged from standpoint of objectively reasonable officer based on totality of facts and circumstances available to that reasonable officer). The arguable probable cause "standard does not shield officers who *unreasonably* conclude that probable cause exists." *Carter v. Butts Cty., Ga*., 821 F. 3d 1310, 1320 (11th Cir. 2016) (emphasis added). An officer causing the arrest of a citizen without arguable probable cause violates clearly established law and thus is not entitled to qualified immunity. *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1297-98 (11th Cir. 2018) (citing *Skop v. City of Atlanta*, 485 F.3d 1130, 1143-44 (11th Cir. 2007)).[5]

---

[5] This is true where a government actor *simply ignores* circumstances which demonstrate that the citizens actions were *authorized or justified*. *See Carter*, 821 F.3d at 1321 (explaining that "no reasonable officer with the information that was readily available to [defendant] at the time he arrested [p]laintiffs could have believed that he had probable cause to arrest them for burglary, criminal trespass, or theft," where defendant ignored documentation that plaintiffs attempted to

While an "objectively reasonable" officer must not necessarily parse through involute legal concepts, make judgments based on conflicting accounts, or consider every affirmative defense, *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997); *Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007) (holding officer need not necessarily determine legal questions to establish probable cause) (citing *Pickens v. Hollowell*, 59 F.3d 1203, 1207 (11th Cir.1995) (addressing potential statute of limitations defense)), that officer may also *not ignore* circumstances that are exculpatory or simply *ignore all circumstances* which would militate against finding probable cause. *Kingsland*, 382 F.3d at 1228-30. *Kingsland*, discusses that certain circumstances alone, disconnected from a totality of circumstances may be sufficient to believe that a person has been driving while intoxicated, for instance slurred speech, dizziness, and bloodshot eyes, but those same conditions when coupled with a collision, during which a person suffers trauma, and is crying, do not necessarily result in arguable probable cause, because "that behavior [is] consistent with that of an accident victim." *Id.* at 1230-31.

---

present to him establishing that they were authorized to be on the property); *see also Cozzi*, 892 F.3d at 1294 (2018) (holding seizure unreasonable where officer ignored obviously exculpatory evidence including the number of tattoos and their appearance available in readily accessible photographs).

*Kingsland's* holding turns on whether, given a totality of circumstances, the defendant simply chooses not to "clarify the factual situation" "as any [] officer acting reasonably in the circumstances" would where "no exigency [] prevented his doing so." *Id.* at 1228-29 (quoting *Sevigny v. Dicksey,* 846 F.2d 953, 957 n.5 (4th Cir.1988))[6]. In other words, an officer must consider the *entirety* of the circumstances to determine whether there is probable cause in order to be reasonable; here the entirety of the circumstances demonstrated clearly that no crime was committed and thus, stating otherwise—especially, knowingly—was unreasonable given the totality of circumstances. Defendants in *Cozzi*, 892 F.3d at

---

[6] A court considers the specific circumstances including the need to make an arrest where there may be immediate danger. If a law enforcement officer is not faced with an immediate need to make an arrest, this Court has held that there is no need for "such a cursory investigation." *Daniels v. Bango*, 487 F. App'x 532, 538 (11th Cir. 2012); *see also Tillman v. Coley*, 886 F. 2d 317, 321 (11th Cir. 1989) ("This is not a case where time was of the essence in making the arrest."). That is, where "the officer 'simply did not bother to do what any police officer acting reasonably in the circumstances would have done to clarify the factual situation' and that '[t]here was no exigency which prevented his doing so,'" there could be no arguable probable cause. *Kingsland*, 382 F.3d at 1229.

Here, all that was done, and all that needed to be done was watch video recordings which demonstrated clearly that no crime had been committed. Doc.101, ¶ 66, Doc. 103, ¶56. Of course, such was ignored and the fact that such videos demonstrated that there was no crime committed and that all of Appellants' actions were lawful was purposefully omitted from the warrant affidavit. As Appellants were employed Atlanta Police Officers, no exigency existed aside from political expediency.

1294 (2018), ignored tattoos in photographs while the instant Defendants ignored

the lawful, justified actions depicted on videotapes.

**B.** **In Any Event the Arrest Warrant Omitted that the Video Evidence Reviewed Demonstrated Appellants' Innocence.**

This Circuit utilizes a two-part test to determine constitutional infirmity of a

legal process under *Franks*. *See generally Paez v. Mulvey*, 915 F.3d at 1287.

> We have employed a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment. First, we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included. *See United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986) ("[W]e must consider: (1) whether the alleged misstatements in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." (citing *Franks*, 438 U.S. 154, 98 S.Ct. 2674)); *see also Madiwale*, 117 F.3d at 1326–27 ("[A] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit ... if inclusion of the omitted facts would have prevented a finding of probable cause." (internal citation and quotation omitted)); *Stewart v. Donges*, 915 F.2d 572, 582 n.13 (10th Cir. 1990) ("Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.").
>
> *Id.*

In other words, one looks to see if an affidavit which contained the intentionally omitted facts, or intentionally included false facts, would still be sufficient for a reasonable jurist to find probable cause.

If the affidavit stated: *Only video evidence was viewed and that video evidence clearly demonstrated no crime was committed*, *see* Doc. 101, ¶ 66; Doc. 103, ¶ 56; that any objective viewer of Appellants acts would have found them necessary, legal, and reasonable, *see* Doc. 101, ¶¶ 25-27; Doc. 103, ¶¶ 22-24; that all force utilized by Appellants was reasonable, necessary, legal, and proportional to the circumstances presenting Appellants, *see* Doc. 101, ¶ 45; Doc. 103, ¶ 45-46; that the force utilized by Appellants was not excessive, *see* Doc. 101, ¶¶ 25-27; Doc. 103, ¶¶ 22-24; that Rayshard Brooks was lawfully under arrest, Doc. 101, ¶ 43; Doc. 103, ¶ 40, that Brooks committed numerous, forcible felony crimes against Appellants, Doc. 101, ¶¶ 42, 144; Doc. 103, ¶¶ 36-37, 94, and that Appellants, both were police officers and authorized to use force in such a situation, *see* Doc. 101, ¶ 42; Doc. 103, ¶ 37, it is clear that no arrest warrant would have issued.[7] While a reasonable actor need not parse complex legal defenses, a

---

[7] This is in addition to the following: that Brooks had committed multiple crimes involving the infliction of serious physical harm and the use of force was necessary to prevent Brooks from committing further forcible felonies; that Brosnan neither stood on Brooks, nor did anything that would constitute aggravated assault; that Brosnan lacked a first aid kit; that Brosnan immediately called for assistance; that Rolfe immediately retrieved his personal first aid kit and began administering emergency assistance to Brooks; that neither Rolfe nor Brosnan willfully or

reasonable actor cannot disregard matters which clearly affect probable cause and obviously vitiate the same. *Kingsland*, 382 F.3d at 1228-30, 1233-34.[8]

Appellants simply cannot brook, that if Individual County Defendants placed in an arrest warrant to a judge, that they viewed a video which demonstrated that all force giving rise to the incident was *necessary, reasonable, legal,* authorized, that Appellants were the victims of multiple felony attacks by a man lawfully under arrest, and in fact the video demonstrated that no crime was committed that a judge would have issued an arrest warrant. Such a conclusion defies logic and any realistic understanding of the role of the neutral and detached judge considering an arrest warrant.

The district court focused on individual misstatements, rather than the totality of circumstances, *see* 877-878. This represents a misapplication of law and a fundamental error in the district court's analysis. *Cf. Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (repeatedly emphasizing that probable cause must be assessed under totality of circumstances and facts available). Additionally, the district court failed to credit factual allegations present in the case or to afford them

---

intentionally failed to provide assistance; that Brosnan only placed a foot on Brooks arm to secure a stolen CEW/ taser, which Brooks utilized as a weapon; and that Rolfe never kicked Brooks. *See* Doc. 101, ¶¶ 34-45, 113-114, 147; 151-154; Doc. 103, ¶¶ 30-47, 94,134, 138-142.

[8] Appellants recognize that *Kingsland* was in part abrogated by *Williams*, 965 F.3d at 1159; that over-ruling involved the application of modern state tort law to section 1983 claims and does not affect the holding as is relevant here. *Id.*

the positive inferences required on a motion to dismiss.[9] *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021) (reciting familiar standard that court must "accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor . . .").

The allegations build to the fact that Individual County Defendants relied solely on video evidence and that that video evidence demonstrated *clearly*, and would have demonstrated to any reasonable actor, that no crimes were committed. *See generally, supra*, n. 6; *see also* Doc. 101, ¶ 66; Doc. 103, ¶ 56. The videos captured the incident and demonstrated the circumstances leading to the ultimate use of force, described throughout the complaint, was imminently reasonable and only occurred after Brooks had brutally, unlawfully attacked Appellants while armed with a dangerous weapon. *Ibid*. Although Individual County Defendants knew that no crime was committed because they viewed recordings demonstrating that no crime had been committed, that they swore out a constitutionally infirm warrant, omitting any number of exculpatory facts, the primary one being that the video evidence demonstrated that *no criminal behavior* occurred. *See* Doc. 101, ¶¶ 63, 66; Doc. 103, ¶¶ 56, 57.

---

[9] Without the affidavit in front of it, the district court could have either accepted that absent the offensive facts there was not probable cause. *PBT Real Est., LLC*, 988 F.3d at 1286, or acted as the court did, apparently assuming that this was untrue and that *there could have* existed independent probable cause in the affidavit. This is clear error.

The district court took part in significant analysis where none was necessary: if an officer swears out a warrant for rape, murder, and arson, based *solely* on video evidence and that video evidence simply reveals a man sitting peaceably in a park committing no crime, it is hard to understand why substantive analysis needs to take place. That is what was pleaded: Individual County Defendants swore to an arrest affidavit after only viewing video recordings, which clearly demonstrated that no crime was committed, and failed to note the same in the arrest affidavit. *See* 14, ¶¶ 63, 66; 68, ¶¶ 56, 57. Appellants supported their claims by averring that a special prosecutor dismissed the charges finding their actions lawful and reasonable. Doc. 101 ¶ 78; Doc. 103, ¶ 67.

Appellants were not required, by case law or statute, to present those videos or the arrest warrant affidavits as evidence. After significant research, Appellants could find no case law that attaches a heightened documentary evidence pleading standard to a case such as this.

### C. The Acts Complained of Clearly Violated Established Law.

At the time Individual County Defendants engaged in their alleged misconduct, the U.S. Supreme Court and the Eleventh Circuit had clearly established that an actor violates the right to be free from unlawful seizure where he or she secures an arrest warrant and a person's subsequent arrest with an affidavit that intentionally contains misrepresentations of material fact and that

25

deliberately contains omissions of material information and known exculpatory evidence. *See Franks*, 438 U.S. 154; *Malley*, 475 U.S. 335; *Paez v. Mulvey*, 915 F.3d at 1287 (holding "intentional or reckless material misstatements or omissions" in warrant affidavit violate Fourth Amendment); *Kingsland*, 382 F.3d at 1232 ("falsifying facts to establish probable cause is patently unconstitutional...."); *Holmes*, 321 F.3d at 1083 ("[A] police officer may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information."); *Jones*, 174 F.3d at 1285.

Likewise, it had been clearly established that causing an arrest absent arguable probable cause violates the Fourth Amendment. *Manuel*, 580 U.S. at 364; *Bailey*, 568 U.S. at 192 (holding arrest *only* reasonable when "based on probable cause to believe that the individual has committed a crime"). For all the foregoing reasons the district court clearly erred in granting defendants Rule 12(b)(6) motion and this Court should reverse the judgement of the district court.

## II. THE DISTRICT COURT ERRED IN FINDING THERE WAS NO SEIZURE OF PROPERTY, AND IGNORED FACTS TO FIND THAT SUCH WAS NOT CAUSED BY DEFENDANTS.

The district court further erred in finding that there was no seizure of Appellants' property, Doc. 164, pp. 28-29, that there was inadequate causation pleaded, *id.,* and that in any event it was not clear that a well-established right had been violated. *Id.* at 29-30.

Property rights have been described as being akin to a bundle of sticks, with myriad distinct and separate interests and rights which are separable. Within this "bundle" are certain canonical interests, including the right to access and utilize property as one wishes. *See Buchanan v. Warley*, 245 U.S. 60, 74 (1917) ("Property consists of the free use, enjoyment, and disposal of a person's acquisitions without control or diminution save by the law of the land.") (citation omitted).

> Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, *use*, and dispose of it. *Id.*

It is universally recognized that the separate rights which make up a property interest are each constitutionally protected. *See, e.g.*, *U.S. v. Gen. Motors Corp.*, 323 U.S. 373, 377-78 (1945) (analyzing Fifth Amendment takings and noting: "[t]he critical terms are 'property,' 'taken' and 'just compensation'. It is conceivable that the first was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to *possess*, *use* and dispose of it.").

27

Interference with a person's peaceable possession of property or interference with its use at will constitutes a "seizure" or a "meaningful interference" with a possessory interest. *Ibid.*

This is profoundly fundamental:

The Fourth Amendment, made applicable to the States by the Fourteenth, provides in pertinent part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."

A "seizure" of property, we have explained, occurs when "there is some meaningful interference with an individual's possessory interests in that property." In addition, we have emphasized that "at the very core" of the Fourth Amendment "stands the right of a man to retreat into his own home." . . .[collecting citations].

*Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (cleaned up).

The district court appeared to misunderstand Appellants' argument. Appellants did not argue below for a novel test or new requirement, *see* 550-553; *cf.* 885 (misconstruing Appellant's argument), rather Appellants clarified that they did not believe that *Brower* is applicable to seizure of property cases; it is limited to cases where an individual's freedom of movement is curtailed. Appellants went on to state that what appears to be the general test in property cases is objective reasonableness, 550-551; *Soldal* 506 U.S. at 71-72 (discussing seizures of property and reasonableness); *see also Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011) (noting Fourth Amendment reasonableness is predominately an objective inquiry unless exceptions apply). What Appellants did note, was that it did not appear as if

28

law of this Circuit has ever addressed causation and a specific test vis-à-vis a government actor using a private party to effect a property seizure. 551-552.

Unquestionably, a government actor can be liable where it is the moving force behind the third-parties interference with another's property rights, *see, e.g.*, *Chmielewski v. City of Pete Beach*, 890 F.3d 942, 950-51 (11th Cir. 2018) (where "taking" occurred due to government encouraging general public to use private citizens land), Appellant simply noted that a specific test does not appear to exist and argued in any event that an objective *Soldal* standard would apply. Doc. 138, pp. 29-32.

## A. <u>A Seizure Occurred Under *Soldal*.</u>

In *Soldal v. Illinois*, various officers stood by to keep the peace while a landlord forcibly moved plaintiff's trailer; however, the officers did not participate in the moving of the trailer. 506 U.S. 56. The Supreme Court found the physical relocation of the trailer to constitute "meaningful interference" with a property right and therefore a seizure:

> As a result of the state action in this case, the Soldals' domicile was not only seized, it literally was carried away, giving new meaning to the term "mobile home." We fail to see how being unceremoniously dispossessed of one's home in the manner alleged to have occurred here can be viewed as anything but a seizure invoking the protection of the Fourth Amendment.
> *Id.*

In reversing the lower holding, the Supreme Court emphasized that under *Jacobsen* "[a] 'seizure of property occurs where there is some meaningful interference with an individual's possessory interest in that property." *Id.* at 61.

Similarly, the Supreme Court in *Illinois v. McArthur*, did not quibble over whether a seizure had occurred. *See generally*, 531 U.S. 326 (2001). In that matter, officers prevented a party from entering his home for *a period of two hours*. *Id.* at 332.

There is little question, that if any conduct would result in the seizure of property, forcing Appellants to flee that property and lose use and *de facto* enjoyment of it for an indeterminate period would constitute a seizure.

## B. The Law Was Clearly Established that Warrantless Seizure's Are *Per Se* Unreasonable Unless Exception Applies.

Qualified immunity is meant to protect "all [those] but the plainly incompetent and those who knowingly violate the law." *Malley*, 475 U.S. at 341.

Rights may be clearly established by one of three methods: (1) "case law with indistinguishable facts clearly establishing the constitutional right," (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009).

Law around warrantless seizures is well established, such constitutes a *per se* unreasonable seizure in violation of the Fourth Amendment unless an exception applies. *See United States v. Place*, 462 U.S. 696, 701 (1983); *accord Crocker v. Beatty*, 886 F3d 1132, 1136 (11th Cir. 2018) ("Generally, the seizure of personal property is *per se* unreasonable when not pursuant to a warrant issued upon probable cause.")

> The protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even . . . [when] no search within the meaning of the Amendment has taken place. *Soldal,* 506 U.S. at 62–63, 68, 113 S.Ct. 538; *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *United States v. Paige,* 136 F.3d 1012, 1021 (5th Cir.1998). Subject only to a few specifically established exceptions not applicable here, seizures conducted outside the judicial process, without prior approval by a judge or magistrate, based on probable cause, *are per se unreasonable under the Fourth Amendment. Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). . .

> *Freeman v. City of Dallas*, 186 F.3d 601, 605 (5th Cir. 1999).

> This Court recently issued an opinion with the same reasoning:

> The right to be free from warrantless seizures of personal property, absent an applicable exception, was clearly established to the point of obvious clarity in 2012. *See, e.g., Virden*, 488 F.3d at 1321; *see also United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983) ("In the ordinary case, the Court has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant ...."). . . .

> . . .Even in "novel factual situations," we must deny qualified immunity when clearly established case law sends the "same message" to

reasonable officers. *Jones*, 857 F.3d at 852 (quoting *Mercado*, 407 F.3d at 1159). Our case law has sent a consistent message, predating 2012, about the warrantless seizure of personal property and how exigent circumstances may arise. The technology of the iPhone simply does not change our analysis. To hold otherwise would deal a devastating blow to the Fourth Amendment in the face of sweeping technological advancement. These advancements do not create ambiguities in Fourth Amendment law; the principles remain as always. Because of this, Beatty is not entitled to qualified immunity.

*Crocker*, 886 F.3d at 1138 (holding that warrantless seizure of property is a broad statement of principle within the law and this not subject to qualified immunity despite novel factual situation).

No party in this case argued that an *established* exception applies; there was talk of exigencies, but no one pointed to any situation in which any court has found that the seizure of a person's home can be justified for the greater good; and the creation of such an exception would run contrary to holdings of the Supreme Court. *See Collidge v. New Hampshire*, 403 U.S. 443, 455 (holding in time of "unrest, whether caused by crime or racial conflict or fear . . . values served by the Fourth Amendment rights are *more* not less important).

In this case, Howard and Bottoms incited a violent mob in an entire city and Appellants were forced to flee from their homes to protect their lives. Doc. 101, ¶¶ 60-62, 86-91, 93-96; Doc. 103, ¶¶ 48-50, 70-75, 77-80. Due to this Appellants could no longer live in their homes. *Ibid*. Where government officials provide a scapegoat to a mob they have incited and thereby force plaintiffs to flee their

32

homes, losing their use of them, it seems clear that a reasonable government official would have notice that such is not appropriate or legal—indeed it is simply *per se* unreasonable unless an established exception applies. *Crocker*, 886 F.3d at 1138.

If anything, the interference in this case is significantly more severe than the interference which occurred in *Soldal*—there it was the moving of a mobile home from one location to another—and the government actors' conduct here more culpable. In *Soldal*, the government actors simply stood by to ensure that a third-party could interfere with plaintiff's property; here those actors incited the violence that interfered with enjoyment of property and focused the same on Appellants. *See* 506 U.S. 58-60 (describing the mobile home being moved), 61 (holding it a seizure); Doc. 101 pp. 19-21; Doc. 103 pp.17-19.

## C. <u>The District Court Ignored Well Pleaded Causation.</u>

Finally, as to causation, Appellants pleaded that the widely published statements caused the interference with their property. Doc. 101, ¶¶91-98, 103; Doc. 103, ¶¶ 75-81, 87. In spite of videos being widely publicly available—again, Appellants pleaded those videos demonstrated that no crime had been committed, Doc. 101, ¶ 66; Doc. 103, ¶ 56—it was the published reports of Bottoms and Howard that caused the violence. Further, by identifying Appellants and accusing them falsely of wrongdoing, based on misrepresentations of the video recordings,

33

Bottoms and Howard intentionally inflamed that violence, focusing it on Appellants. Doc. 101, ¶¶91-98, 103; Doc. 103, ¶¶ 75-81, 87.

The district court, whether or not it believed that the interference was caused by Howard and Bottoms, was required to accept the pleadings as true, and could not simply infer that the causation was something other than that pleaded. *See* Doc. 164, pp. 34, 43.[10] In an ordinary 1983 claim against an individual, there simply needs to be a "causal connection between the constitutional violation and the injuries suffered[,]" *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1317 n. 29 (11th Cir. 2010),[11] and Appellants so pleaded. The district court erred in granting defendants rule 12(b)(6) motion when the issues of seizures of property and causation were well pled.

---

[10] Additionally, the "moving force" test to which the court appears to apply to individuals is a test applied to entities, *see generally City of Canton* 489 U.S. at 391 (adopting moving force causation for municipalities because "[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983."); *Chabad*, 48 F.4th at 1235–36 (applying "moving force" causation to municipal liability claim).

[11]

> A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation. *See Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 706 (11th Cir.1985).

*Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986).

### III.    THE DISTRICT COURT ERRED BY MISSAPPLYING CLEAR CASELAW RELATING TO STIGMA-PLUS CLAIMS

To state a stigma-plus CLAIM one need plead the loss of a property right or liberty interest in connection with a defamatory statement. *Rehberg v. Paulk*, 611 F.3d 828, 853(11th Cir. 2010) ("The 'stigma-plus' test requires the plaintiff to show deprivation of a previously recognized Fourteenth Amendment property or liberty interest "in connection with' the claimed defamation."). That is most often an employment interest, but in this case, Appellants pleaded that the liberty interests at stake were their interests in their home and their interests under the Fourth Amendment. *See* Doc. 101, ¶¶ 129, 134; *see also* Doc. 103, ¶¶ 116, 121.

A Fourth Amendment violation *is* a recognized and established liberty interest that can serve as a "plus" in a stigma plus action. *See generally Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980) (explicitly holding that Fourth Amendment violation in connection with defamation constitutes stigma plus claim)*.* A pleading is adequate where "accepting appellants' allegations as true, the defamation was intimately connected with the unlawful arrest of appellants and the unlawful search and seizure . . . Hence, the issue is whether the nexus between the defamation and the unlawful conduct is sufficient to satisfy the stigma-plus test of . . . . " *Id.* at 517.

35

*Paul* (outside of the employment context) does not require "the defamation [to] cause the deprivation of another interest in order for the liberty interests to be implicated . . ." *id.* at 518, but rather requires the defamatory statements to be "in the eyes of the public" connected with the constitutional violation. *Id.*

> Hence, it is now apparent that the defamatory communication need not cause the loss of the protected right, or more tangible interest, in order to satisfy the stigma-plus requirement of Paul. Instead, it is sufficient that the defamation occur in connection with, and be reasonably related to, the alteration of the right or interest. Here we face a similar connection between the "stigma" and the "plus" but in the context of the state's deprivation of an individual's fourth amendment rights rather than the state's alteration of a state-created right or interest. In Owen, the defamation did not cause the employee's discharge; instead, the fact that the *public perceived* the defamatory charges to be connected to the discharge was sufficient to give rise to a liberty interest. Similarly, here the defamation did not cause the violation of appellants' fourth amendment rights; however, the *public surely perceived* the defamatory statements made by the police and Rashkind to be connected to the arrests and search and seizure. In Dennis, the defamation did not cause the refusal to rehire; rather, unpublicized reasons were the basis for the decision not to renew Dennis' contract and the defamation arose only when those reasons were subsequently made public. Similarly, here the defamation did not cause the unlawful arrests and search and seizure; rather, unpublicized reasons of Rashkind and the police led to the arrests and search and seizure, and the defamation occurred when those reasons were subsequently publicly aired.

> We can discern no rational reason why reputation should be accorded any less protection when the injury to reputation is inflicted in connection with the denial of a right specifically secured by the Bill of Rights than when the injury occurs in connection with the denial of a state-created right or interest such as employment. Just as the state, as employer, may not create and disseminate a false and defamatory impression about an employee in connection with his termination, so the state, in enforcing its laws, may not issue false and defamatory

statements about a citizen in connection with an unlawful arrest or search and seizure without complying with due process.

*Id.* at 519. Emphasis added.

As to the loss of an additional liberty interest, it is clear that the home is a quintessential liberty interest, *see generally*, *Meyer v. Nebraska*, 262 U.S. 390, 399 (stating home is a traditionally established liberty interest); *accord Soldal*, 506 U.S. at 61 (noting home stands at very core of Fourth Amendment's protections); *see also* U.S. Const. Amend. IV (specifically providing protection to persons houses); clear enough to put a party on notice that the loss of such in connection with defamatory statements would qualify as a stigma plus claim. *Ibid.*

The district court's decision rested upon Appellants neither losing their homes, nor being subject to a Fourth Amendment violation, were plaintiffs to have suffered the same, then clearly their stigma-plus claim should have survived and the actions of Appellees' contrary well-established law.[12]

_____

[12] Appellants did not cite to cases such as *Meyer v. Nebraska* to describe stigma-plus claims, but rather to note one's home is considered a liberty interest, *see Meyer v. Nebraska*, 262 U.S. 390, 399 (defining various liberty interests including establishing home as protected by due process and "long recognized at common law as essential to the orderly pursuit of happiness by free men.")

Indeed, it is not uncommon to see *Meyer* cited in cases discussing liberty interests where stigma-plus claims are not based on employment. *See, e.g.*, *Collier v. Buckner*, 303 F.Supp.3d 1232, 1236 (N.D. Ala. 2018) (noting liberty interest in employment is not the only legally protected interest that may be damaged by stigma and citing *Meyer* among others).

### IV.    THE DISTRICT COURT ERRED IN *SUA SPONTE* DISMISSING ROLFE'S EQUAL PROTECTION CLAIM ON GROUNDS NEVER ARGUED.

First, defendants bear the burden on demonstrating that a plaintiff's complaint fails as a matter of law. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd*., 800 F.2d 1577, 1581 (11th Cir 1986). City Defendants argued *in toto* that a class-of-one equal protection claim cannot be made in the context of government employment. Doc. 116-1, p. 19 (citing *Engquist Oregon Dep't of Agr*., 553 U.S. 591, 605 (2008). Rolfe opposed this, by noting that he did not bring a class-of-one claim under *Olech*, but rather an equal protection claim based on a non-suspect class. Doc. 134, pp. 5-6. For this reason Rolfe argued that Appellees failed to meet their burden on a motion to dismiss. *Ibid*.

Rather than address the arguments raised, the district court *sua sponte* applied a rational basis test (admittedly the test which applies), Doc. 164 pp. 45-46, but Appellants were never provided notice that dismissal was considered on this basis, nor did the parties brief the same; this is forbidden and in and of itself an error. *See Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 525, 527 (11th Cir. 1983).

In explaining *Jefferson*, this Court has stated:

we specifically prohibited such a *sua sponte* dismissal in the following circumstances: (1) the defendant had not filed an answer and, thus, the plaintiff still had a right under Fed.R.Civ.P. 15(a) to amend the

38

complaint; (2) the plaintiff's claim was brought in good faith and was not vexatious or patently frivolous; and (3) the district court had provided the plaintiff with neither notice of its intent to dismiss the complaint nor an opportunity to respond.

*Danow v. Borack*, 197 Fed.Appx. 853, 856 (11th Cir. 2006).

This has been repeated in a great multitude of circumstances, *see, e.g.*, *Russell v. Redstone Fed. Credit Union*, 610 F. Appx. 807, 809 (11th Cir. 2015), and in numerous contexts. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (holding only when patently frivolous or futile can court dismiss without notice in accordance with due process).

Here, City Defendants could have argued that there was a rational basis for terminating Officer Rolfe, and Officer Rolfe could have responded.

Appellant pleaded in his Complaint he was targeted for disparate treatment and that the City Defendants were motivated by personal interests to sacrifice members of a group that was then unpopular, in order to curry popular favor and advance their own personal interests. Doc. 101, ¶ 60. This was done while they knew that excessive force was not utilized. *See, supra,* n. 7; *see also* Doc. 101, ¶¶ 66, 113-114.

If the district court wished to apply the rational basis test to the facts averred in this case, that City Defendants knowingly condemned innocent men, placed their lives in grave danger, and did so all while knowing no wrong had been done

in an extremely public manner seemingly designed to optimize damage to

Appellants, it could have noticed Appellant and applied the necessary analysis:

> The first step in determining whether legislation survives rational-basis scrutiny is identifying a legitimate government purpose—a goal—which the enacting government body *could* have been pursuing. The *actual* motivations of the enacting governmental body are entirely irrelevant.... The second step of rational-basis scrutiny asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny.

> *Haves v. City of Miami,* 52 F.3d 918, 921–22 (11th Cir.1995) (internal

quotations and citations omitted).

Although a judge—and people—may conclude that knowingly sacrificing

the lives of innocent men to serve a greater purpose, to quell rioting masses, may

further a legitimate government interest and be rational—Appellants pleaded to the

contrary. Placating the populace with sacrifice has been an option favored

throughout history.[13]

---

[13] *See, e.g.*, Katie Rose Guest Pryal, *Heller's Scapegoats*, 93 N.C. L. Rev. 1439, 1447 (2015) (quoting Joseph E. Kennedy, *Monstrous Offenders and the Search for Solidarity through Modern Punishment*, 51 Hastings L.J. 829, 833 (2000)) ("The essence of scapegoating is the attempt to identify the sources of social problems as external to the group."); *see also id.* at 1446("Thus, as James Jasinski explains, Burke saw the scapegoat as a means of purifying society of its sins, or of removing

Appellants required notice and an opportunity to respond including demonstrating that the "legitimate" rational basis is a pretext. *See Adams  ex rel. Kasper v. School Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022) *(en banc)* (recognizing that an otherwise neutral law still violates the Equal Protection Clause when it is "motivated by 'purposeful discrimination' ") (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979)); *see also Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1321–22 (11th Cir. 2021).

This complexity is somewhat heightened in that it does not appear as if the Eleventh Circuit has directly tackled the question of the interplay between the rational-basis test and a motion to dismiss. *See generally Smile Direct Club, LLC v. Lacefield*, No. 1:18-cv-02328-SDG, 2023 WL 2763662 at *7 (N.D.Ga. Mar. 31, 2023) (citing *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995) ("Competing standards for resolving a plaintiff's equal protection claim under Rule 12 complicate our analysis when we review a plaintiff's claim under the rational basis standard."); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992) ("A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R. Civ. P. 12(b)(6).").

---

its guilt, through a process of 'externalization.'"); Paul Kahn, *Managing Violence: Acoustic Separation, Memorials, and Scapegoats*, 77 RJUPR 317 (2008)

Ultimately, Rolfe pleaded that the disparate treatment happened for an improper purpose and that there was no rational basis for the disparate treatment. Doc. 101, ¶211. The district court improperly ignored that and determined that the purpose was proper—without analysis, contrary to facts pleaded - and to compound these errors, did so *sua sponte* absent notice and chance to respond. To do so was an abuse of discretion. *Jefferson*, 695 F.2d at 527.

Had the District court utilized a reasoned analysis (or at a minimum alerted Officers that it intended to *sua sponte* address an entirely unargued theory that would compromise the pleaded claim) it is likely that the opinion would resemble the reasoning in *Smile Direct Club, LLC*, No. 2023 WL 2763662 at *8 (denying motion to dismiss where allegations of pretextual non-discriminatory basis for action on rational-basis review). It, however, does not and it does not appear as if the district court actually applied the correct law to the facts well pleaded. It was pled that all of Rolfe and Brosnan's conduct was objectively reasonable: clearly legal, clearly in compliance with all APD policies and training, completely justified and authorized, completely proportional, and only made in response to an extremely intoxicated man who had committed multiple forcible felonies and was armed with a stolen weapon which he could not legally possess. It is unclear what *legitimate concerns* regarding Rolfe's conduct towards Brooks the District court

was considering as justifying his termination. *Compare* Doc. 101, ¶ 60, 211, *with* Doc. 164, p. 46.

It appears, that the district court ignored the pleadings to find, independently, that Rolfe's conduct was problematic, something never pleaded.

## V.    THE DISTRICT COURT MISAPPLIED THE BURDEN-SHIFTING QUALIFIED IMMUNITY FRAMEWORK.

To begin, Howard neither cited law nor statute demonstrating that he was acting within the legitimate scope of his duties in undertaking the actions noted within the Complaint. First, his actions were taken to further his re-election, *i.e.*, the public statements he was making were made to further his re-election. This was not analyzed by Howard and certainly was not briefed. *See* Doc. 125 generally; *see also Id.* at p. 14; Doc. 126, pp. 1-25. Literally, some of the statements were made, as pled, in admitted campaign stops. Doc. 101, ¶ 120; Doc. 103, ¶ 109.

Appellants did not challenge whether or not a prosecutor speaking about a prosecution falls within the scope of a prosecutor's discretionary duties, it does, *see Van de Kamp*, 555 U.S. 335, 341-42 (2009); nor did Appellants challenge that prosecutors assisting police in conducting probable cause investigations may fall within the scope of their duties, they do, *see Buckley*, 509 U.S. 259, 274 (1993). What Appellants noted was that Howard never addressed what was *actually pleaded* and because of this, never addressed whether or not the actions, as pleaded in the Complaint, fell within the discretional scope of his duties. Doc. 138, p. 1

43

(noting Howard flatly refuses to address facts as pleaded and address function pleaded); *Id.* at pp. 12-13 (re-iterating failure to address actual function as pleaded as first step in qualified immunity analysis).

Appellants argument boiled down to something akin to this analogy: a dog catcher seizing dogs, *i.e.*, doing his job would receive qualified immunity, even if he were tranquilizing dogs and catching them to further personal vendettas and doing so without cause; while clearly the seizure would be problematic, it is equally clear that catching dogs falls within the scope of his duties, but a dog catcher arresting persons is not acting within the scope of his duties. *Id.* at 15-16 (developing this argument). Howard argued he was a dog catcher catching dogs, and thus was acting within his scope of duties, but Appellants alleged he was a dog catcher arresting persons which is what he needed to analyze and thus he analyzed the wrong function. Doc. 125, pp. 14-17.

Howard, at its most basic elements, formed an unauthorized quasi-police agency aimed at usurping traditional law enforcement duties to arrest "bad cops"—again, Appellant's never contended that prosecutors assisting in the investigation of probable cause may not result in qualified immunity—but this is *not* what the Complaint alleged nor Howard addressed. *Id.* at p. 14 (addressing "choices regarding the initiation of a criminal prosecution and [] decisions about the criminal prosecution"); *id.* ("Seeking arrest warrants and search warrants, and

initiating prosecutions are part of a district attorney's discretionary function"); *id.* at p. 17 ("entitled to qualified immunity for his comments to the press concerning the prosecution of Plaintiff ").

The Complaint does not deal with *prosecutorial* choices; criminal *prosecution*; the initiation of a criminal *prosecution*; initiating *prosecution*; statements made to the press relating to *prosecution*. *See generally* Doc. 101, Doc. 103. Indeed, while Howard may have enjoyed qualified immunity under many circumstances in seeking warrants, he ignored the facts pleaded to address prosecutorial functions, "making prosecutorial choices", "initiating prosecutions", *etc*. *See* Doc. 125, p. 14. Howard never addressed the proper function pleaded as he was required to do. *See Id.*

 No cases cited by Howard establish qualified immunity in a similar function.

*Capt. Jack's Crab Shack, Inc. v. Cooke*, Case Nos. 21-11112, 21-11114, 21-11113, 2022 WL 4375364 (11th Cir. Sept. 22, 2022), involved no dispute as to whether a prosecutor acts in his discretionary authority where he investigates and prosecutes a person, even where such involves police and prosecutors conspiring to place false information in a search warrant affidavit.

Here there was a dispute as to whether Howard running a quasi-police agency *independent* of any police agency, to further his political career, secure re-

election, and provide campaign fodder was acting within the scope of his duties as a state prosecutor. *Captain Jacks* does not demonstrate that.

Nor does *Paul*, 424 U.S. at 701 (police officers publishing arrest photos) nor *Caldarola*, establish that a prosecutor may publicize an arrest made by his quasi police agency in campaign promotions. *Caldarola v. Cnty. of Westchester*, 142 F.Supp. 2d 431, 443 (S.D.N.Y. 2001) (department of corrections and county executive posting photos of arrest). A prosecutor can certainly speak to the press about prosecutions; police can certainly publicize arrests; the department of corrections and county executives can publicize the arrest of its employee.

These cases, however, do not address whether or not a prosecutor doing what Howard is pleaded to have done is acting in the scope of his discretionary duties. This Court cannot allow a defendant to skirt their obligations, especially on a motion to dismiss.

Likewise, Bottoms failed to demonstrate that she was acting within the scope of her statutory duties. She cited to statutes, without any explanation, that have no clear bearing on the acts complained of. Doc. 115-1, p. 4; Doc. 116-1, p. 5.

This Court, in *Habert Intern., Inc. v. James*, set forth the inquiry cogently and briefly: "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties[?]" 157 F.3d 1271, 1282 (11th Cir. 1998). The

Appellees failed to meet their burden to provide sufficient law to allow the district court to answer, "yes." Howard argued that prosecutors acting *with police* in a probable cause investigation are entitled to qualified immunity, based on unpublished law, but *that was not what he did*. He showed that county executives and DOC personnel in the Southern District of New York could publicize arrests, but *that is not what he did* in the Northern District of Georgia; he discussed at length his discretion in initiating a prosecution, but that likewise that is not what Appellants pleaded he did – withheld evidence, falsely pursued charges, and arrested Appellants without probable cause. Howard correctly provides no authority allowing him to do so with impunity.

In the same manner, Bottoms demonstrated that her "department heads . . ., with the exception of the heads of the departments of finance and law, shall be under the direction and supervision of the mayor . . ." but never developed any support that Bottoms could publicize false facts or unlawfully terminate a police officer. *See* Doc. 115-1, p. 4; Doc. 116-1, p. 5; Doc. 134, p. 7-9. Likewise, Bottoms demonstrated that there exist various officers, with various duties, however, none of those offices or duties involved communications with media, or termination of police officers. *See* Doc. 115-1, p. 4; Doc. 116-1, pp. 7-9.

Appellants conceded that Shields had the discretionary authority to terminate Officer Rolfe, Doc. 134, p. 7; they readily admitted it and noted that she had

47

demonstrated her authority to do so and thus met her burden. *Id.* Bottoms cited to two city ordinances, without developing any argument, and those two statutes come nowhere near demonstrating that Bottoms had the authority to do what she did. *See* Doc. 115-1, p. 4; Doc. 116-1, p. 5.

While a court could make an argument as to why Bottoms did exercise the authority to speak to the media, that was neither the district court's burden to carry nor Appellants. Because Bottoms and Howard failed to establish that the acts complained of fell within the discretionary scope of their duties, the qualified immunity analysis should have ended without shifting to Appellants.

## VI.    THE COURT ERRED IN FAILING TO ANALYZE THE FUNCTION PLEADED IN ITS SOVEREIGN IMMMUNITY AND STATE-CAPACITY ANALYSIS.

In similar fashion, the Court's analysis of the functional capacity of Howard, went down a line of argumentation made neither by the County nor Howard. Howard argued that he was acting in a *prosecutorial* capacity and that while acting as a prosecutor, making prosecutorial decisions, he was a state actor. Doc. 125; Doc. 126, pp. 1-25. The County argued the same. Doc. 108-1, pp. 1-21; Doc. 113-1 pp. 1-23.

Appellant did not argue this was incorrect, indeed a prosecutor undertaking a prosecution is without doubt acting in a state capacity. Likewise, a prosecutor training other prosecutors in prosecutorial tasks is acting in a state function.

Plaintiffs readily accept that Howard is a state actor when acting as a prosecutor. The problem here is that Howard was not acting as a State prosecutor. Rather, he was utilizing County funds to train and supervise County employees, engaged in non-prosecutorial tasks; indeed, tasks which have nothing whatsoever to do with the duties and powers entrusted to him by the State. Further, this was being done in a highly localized area, Fulton County, utilizing employees of the County who were subject to County Human Resources, County discipline, and County training. Brosnan FAC ¶¶ 13-14, 163; Rolfe FAC ¶¶ 16-17, 177. Given the above it appears as if the State has almost nothing to do with the particular function— indeed, it is not a State function or a function that a District Attorney is empowered to undertake under state law. GA CONST Art. 6, § 8, ¶ I(d). It is one that was delegated to Howard by the County. Further, the County at any point could have terminated those employees or the funding which allowed for their positions. Again, Howard was essentially the chief of an independent County-funded *quasi*-police force that was focused on law enforcement activities rather than prosecutorial activities.

Doc. 138, pp. 15-16.

The Appellees burden, on a motion to dismiss, was to demonstrate as a matter of law that Appellants' claim would fail, demonstrating that a prosecutor *acting in a prosecutorial role* is a state actor—something that was never contested—in no way demonstrated conclusively that a prosecutor implementing a training regime, utilizing county funds and county employees, subject to county training, discipline, and Human resources, to run a law enforcement agency (that acts solely within a county) is acting in a state capacity. Doc. 125; Doc. 126, pp. 1-25.

It was uncontested that one needed to undertake the analysis focusing on the specific *function* the actor was engaged in when taking the action that gave rise to liability. *See* 890 (citing *Owens v. Fulton Cnty*, 877 F.2d 947, 952 (11th Cir. 1989) which specifically requires a functional analysis). The district court here, however, almost immediately shifted to address Howard functioning as a prosecutor. Doc. 164, p. 37 (apparently analyzing district attorney's "prosecutorial decisions" and their ability to "prosecute" crimes under the Georgia constitution).

Here Howard was managing, supervising, and training, county employees, paid with county funds, subject to county discipline and training protocols, to run a county law enforcement agency, that operated solely within a single county.[14] Doc. 138, pp. 3-4, 12-14. Howard was not acting as a prosecutor.

Appellants, opposed the motions to dismiss primarily on this foundational error, the motions to dismiss needed to address the actor's particular function and

---

[14] No party demonstrated that as a matter of law, this was either a state function or a function relating to state constitutional duties. Appellants contended below that this would be no different than if the County delegated funds, manpower, and resources to Howard to run an insane asylum or park.

The District court appeared to miss this, for instance, citing to *Van de Kamp* for the proposition that a prosecutor training others in *prosecutorial* functions that are "intimate[ly] connect[ed to] prosecutorial activity and the trial process[.]" 555 U.S. at 346. *Van de Kamp* focuses on prosecutors training parties on trial related activities, i.e., activities related to the prosecutorial process.

While certainly, a court could find that a Georgia district attorney running an insane asylum, for example, is a state actor, it would need to analyze that district attorney in that function rather than prosecution.

acts, rather than simply his or her position, and the Defendants roundly failed to address the correct function. For this reason, Appellants never substantively briefed or opposed an analysis based on the appropriate function, namely "running a quasi-police force with County funding." *Id.* at 15-16.

The district court, likewise, failed to address whether or not in running a quasi-police force, staffed with county employees, *etc.*, the function here that was pleaded. Doc. 164, pp. 37-39 (solely addressing prosecutors acting within prosecutorial functions). This was in the simplest of terms a misapplication of law. *Owens*, 877 F.2d at 952. The district court was required to analyze the actor in the particular function they were engaged in, *as pled*, and it failed to do.

This is made clear by the cases cited. The Court cites to *Owens*, which addresses a prosecutor acting in a prosecutorial function, *id.* at p. 38; the Court cites to *Van de Kamp* which addresses a prosecutor providing training which relates to trial activities, and may lead to errors in trial's prosecutions, *id.* at p. 39; it cites to Ga. Const. Art VI. § 8, para. 1, which provides that a prosecutor can represent the state in criminal matters, *id.* at p. 40. None of this touches on whether Howard acting in the function and capacity *complained of* was acting as a county or state actor.

The court must analyze his actual acts, *i.e.*, running an county-funded, county-staffed, quasi-police agency. Because the district court failed to do this, it misapplied clear law and thereby erred.

### VII.   THE DISTRICT COURT ERRED BY BASING ITS MONELL ANALYSIS ON LEGAL MISAPPREHENSIONS.

The district court's *Monell* analysis was based on there existing no underlying constitutional tort (for both Howard and Bottoms) and a finding that Howard acted in a state rather than county capacity. Were this Court to issue a decision that affects those underlying assumptions, reversal on the *Monell* claims would be appropriate with instructions to conduct a *Monell* analysis in line with the holdings of this Court.

### VIII.  THE COURT ERRED BY ASSUMING ROLFE FAILED TO PROVIDE AN *ANTE LITEM* NOTICE WHERE IT WAS ONLY ARGUED THAT BROSNAN FAILED TO PROVIDE THE SAME.

No party argued that Officer Rolfe failed to provide an *ante litem* notice, and in any event that was contrary to what was pleaded, the district court's dismissing such *sua sponte* was in error. *Jefferson*, 695 F.2d at 527. Rolfe did, in fact, do so.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, this Court should reverse the District court's judgement and remand this matter to the District court with instructions to enter an order denying Appellees' motions to dismiss and grant all other further relief that this Court finds just and proper.

Respectfully submitted this 3rd day of July, 2024.


  */s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023
  */s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045
LORUSSO LAW FIRM, P.C.
1827 POWERS FERRY ROAD SE
BUILDING 8
ATLANTA, GA 30339
(770) 644-2378
lance@lorussolawfirm.com
ken@lorussolawfirm.com

  */s/ Adam Hames*
ADAM HAMES
GEORGIA BAR NO. 320498
THE HAMES LAW FIRM LLC
511 EAST PACES FERRY ROAD NE
ATLANTA, GA 30305
(404) 842-9577
adam@amh-law.com


*Counsel for Plaintiff-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 12,690 words excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Local Rule 32-4.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 16 in 14-point Times New Roman.

Respectfully submitted this 3rd day of July, 2024.

  */s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023
  */s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045
LORUSSO LAW FIRM, P.C.
1827 POWERS FERRY ROAD SE
BUILDING 8
ATLANTA, GA 30339
(770) 644-2378
lance@lorussolawfirm.com
ken@lorussolawfirm.com

  */s/ Adam Hames*
ADAM HAMES
GEORGIA BAR NO. 320498
THE HAMES LAW FIRM LLC
511 EAST PACES FERRY ROAD NE
ATLANTA, GA 30305
(404) 842-9577
adam@amh-law.com


*Counsel for Plaintiff-Appellants*

54

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on July 3, 2024.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted this 3rd day of July, 2024.

  */s/ Lance J. LoRusso*
LANCE J. LORUSSO, ESQ.
GEORGIA BAR NO. 458023
  */s/ Ken Davis*
KEN DAVIS, ESQ.
GEORGIA BAR NO. 705045
LORUSSO LAW FIRM, P.C.
1827 POWERS FERRY ROAD SE
BUILDING 8
ATLANTA, GA 30339
(770) 644-2378
lance@lorussolawfirm.com
ken@lorussolawfirm.com

  */s/ Adam Hames*
ADAM HAMES
GEORGIA BAR NO. 320498
THE HAMES LAW FIRM LLC
511 EAST PACES FERRY ROAD NE
ATLANTA, GA 30305
(404) 842-9577
adam@amh-law.com

*Counsel for Plaintiff-Appellants*